No. 22-11287

---

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

HEALTH FREEDOM DEFENSE FUND, INC., *et al.*,

*Plaintiffs-Appellees*,

v.

JOSEPH R. BIDEN, JR., President of the United States, *et al.*,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Middle District of Florida

## OPENING BRIEF FOR APPELLANTS

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
  *Attorney General*

ROGER B. HANDBERG
  *United States Attorney*

ALISA B. KLEIN
BRIAN J. SPRINGER
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7537*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 616-5446*

*Health Freedom Defense Fund v. Biden*, No. 22-11287

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1(a)(1), counsel for the defendants-appellants certify that the following have an interest in the outcome of this appeal:

Becerra, Xavier

Beckenhauer, Eric B.

Biden, Jr., Joseph R.

Boynton, Brian M.

Cetron, Martin S.

Davillier Law Group, LLC

Daza, Ana Carolina

Freidah, Andrew F.

Gerardi, Michael J.

Hadaway, Brant C.

Hadaway, PLLC

Handberg, Roger B.

Health Freedom Defense Fund, Inc.

Klein, Alisa B.

Mizelle, Honorable Kathryn Kimball, U.S. District Court Judge

Pezzi, Stephen M.

*Health Freedom Defense Fund v. Biden*, No. 22-11287

Pope, Sarah

Porcelli, Honorable Anthony E., U.S. Magistrate Judge

Springer, Brian J.

United States of America

U.S. Centers for Disease Control and Prevention

U.S. Department of Health and Human Services

Walensky, Rochelle P.

Walker, Johnny H.

Wentz, Jr., George Robinson

## STATEMENT REGARDING ORAL ARGUMENT

To prevent the spread of COVID-19, the Centers for Disease Control and Prevention (CDC) issued an order that generally requires people to wear masks when traveling on public transportation and at transportation hubs. *Requirement for Persons To Wear Masks While on Conveyances and at Transportation Hubs*, 86 Fed. Reg. 8025, 8026 (Feb. 3, 2021). The district court vacated the CDC order nationwide, ruling that the order exceeds the CDC's statutory authority, that it is arbitrary and capricious, and that the CDC did not have good cause to make the order effective without delay. Another judge in the same district has since reached the opposite conclusion and upheld the transportation mask order. *See Wall v. CDC*, No. 21-975, 2022 WL 1619516 (M.D. Fla. Apr. 29, 2022), *appeal pending*, No. 22-11532 (11th Cir.).

Given the importance of the issues presented, the government respectfully requests oral argument.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................1

STATEMENT OF JURISDICTION ................................................. 3

STATEMENT OF THE ISSUES........................................................ 4

STATEMENT OF THE CASE ........................................................... 4

I.    Statutory Background ........................................................... 4

II.   The CDC's Transportation Mask Order................................ 5

III.  District Court Proceedings.................................................... 8

IV.   Standard Of Review ............................................................. 9

SUMMARY OF ARGUMENT ....................................................... 10

ARGUMENT ....................................................................................12

I.    The Transportation Mask Order Is Within The CDC's Statutory
      Authority ..............................................................................12

      A.   Section 361(a) Expressly Authorizes Sanitation Measures,
           And Masks Are A Conventional Sanitation Measure.................12

      B.   The District Court's Rulings Are Contrary To
           Section 361(a)'s Plain Text And Longstanding Agency
           Regulations .................................................................15

II.   The Transportation Mask Order Is Not Arbitrary And
      Capricious Or Procedurally Invalid ................................... 20

      A.   The CDC Reasonably Found Masks Necessary To Prevent
           The Spread Of COVID-19 On Public Transportation And
           At Transportation Hubs ............................................. 20

B.   The CDC Reasonably Found Good Cause To Make The
     Order Effective Without Delay ................................................. 24

III.  The District Court Erred In Issuing Nationwide Relief ..................... 27

     A.   Nationwide Relief Contravenes Bedrock Principles Of
          Standing, Equity, Comity, And Judicial Restraint ................... 27

     B.   The District Court Provided No Sound Basis For
          Departing From These Principles ............................................. 31

CONCLUSION ............................................................................................ 34

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF CITATIONS

**Cases:**                                                            **<u>Page(s)</u>**

*Alabama Ass'n of Realtors v. Department of Health & Human Servs.*,
   141 S. Ct. 2485 (2021) (per curiam) ................. 1, 4, 5, 10, 12, 13, 18, 19, 20

*American Pipe & Constr. Co. v. Utah*,
   414 U.S. 538 (1974) ................................................................ 33

*Arizona v. Biden*,
   31 F.4th 469 (6th Cir. 2022) ............................................... 30, 33

*Babbitt v. Sweet Home Chapter of Communities for a Great Or.*,
   515 U.S. 687 (1995) ............................................................. 18, 19

*Biden v. Missouri*,
   142 S. Ct. 647 (2022) (per curiam) .......................... 2, 11, 20, 21, 22, 25, 27

*Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*,
   781 F.3d 1271 (11th Cir. 2015) .................................................. 31

*Brown v. Nexus Bus. Sols., LLC*,
   29 F.4th 1315 (11th Cir. 2022) ................................................... 9

*Califano v. Yamasaki*,
   442 U.S. 682 (1979) ........................................................... 29, 33

*Camreta v. Greene*,
   563 U.S. 692 (2011) ............................................................... 28

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
   467 U.S. 837 (1984) ............................................................... 18

*Competitive Enter. Inst. v. U.S. Dep't of Transp.*,
   863 F.3d 911 (D.C. Cir. 2017) .................................................. 21

---

* Authorities upon which we chiefly rely are marked with asterisks.

iv

*Corbett v. TSA*,
19 F.4th 478 (D.C. Cir. 2021) ........................................................ 8, 20, 26

*Department of Homeland Sec. v. New York*,
140 S. Ct. 599 (2020) ................................................................. 28, 29, 33

*FCC v. Prometheus Radio Project*,
141 S. Ct. 1150 (2021) .................................................................. 21, 22, 24

*Fishman & Tobin, Inc. v. Tropical Shipping & Constr. Co.*,
240 F.3d 956 (11th Cir. 2001) .................................................................. 28

*Florida v. Department of Health & Human Servs.*,
19 F.4th 1271 (11th Cir. 2021) ............................................................ 26, 29

*Gasperini v. Center for Humanities, Inc.*,
518 U.S. 415 (1996) .................................................................................. 28

*Gill v. Whitford*,
138 S. Ct. 1916 (2018) .............................................................................. 28

*Gun Owners of Am., Inc. v. Garland*,
992 F.3d 446 (6th Cir.), *vacated on other grounds*,
19 F.4th 890 (6th Cir. 2021) (en banc) .................................................... 30

*Hecht Co. v. Bowles*,
321 U.S. 321 (1944) ............................................................................. 31, 32

*Holland v. National Mining Ass'n*,
309 F.3d 808 (D.C. Cir. 2002) ................................................................. 30

*Livingston Educ. Serv. Agency v. Becerra*, --- F.4th ---,
No. 22-1257, 2022 WL 1594779 (6th Cir. May 20, 2022) ........................ 27

*Louisiana v. Mathews*,
427 F. Supp. 174 (E.D. La. 1977) ....................................................... 16, 17

*Madsen v. Women's Health Ctr., Inc.*,
512 U.S. 753 (1994) ................................................................................. 29

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v.*
   *State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983)..................................................................20

*Sorenson Commc'ns Inc. v. FCC*,
   755 F.3d 702 (D.C. Cir. 2014)...............................................26

*Tiger Lily, LLC v. U.S. Dep't of Hous. & Urban Dev.*:
   992 F.3d 518 (6th Cir. 2021) ................................................ 18
   5 F.4th 666 (6th Cir. 2021).................................................... 18

*Trump v. Hawaii*,
   138 S. Ct. 2392 (2018)...............................................29, 30, 32

*United States v. Dean*,
   604 F.3d 1275 (11th Cir. 2010)............................................. 25

*United States v. Mendoza*,
   464 U.S. 154 (1984) .........................................................29, 30

*Virginia Soc'y for Human Life, Inc. v. Federal Election Comm'n*,
   263 F.3d 379 (4th Cir. 2001)..................................................31

*Wall v. CDC*,
   No. 21-975, 2022 WL 1619516 (M.D. Fla. Apr. 29, 2022),
   *appeal pending*, No. 22-11532 (11th Cir.)...............3, 13, 19, 20, 22, 24, 28

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982)................................................................ 32

**Statutes:**

Act of Oct. 15, 1914,
   63 Cong. ch. 323, 38 Stat. 730 ............................................. 32

Communications Act of 1934,
   73 Cong. ch. 652, 48 Stat. 1064............................................ 32

Hepburn Act,
   59 Cong. ch. 3591, 34 Stat. 584 (1906) ................................ 32

5 U.S.C. § 553(b)(B) ................................................................. 24, 25

20 U.S.C. § 3508(b) ...................................................................... 5

28 U.S.C. § 1291 ............................................................................ 4

28 U.S.C. § 1331 ............................................................................ 3

*42 U.S.C. § 264(a) ........................................................ 4, 5, 13, 15

42 U.S.C. § 264(b)-(d) .................................................................19

**Regulations:**

21 C.F.R. part 118 .......................................................................16

21 C.F.R. part 606 .......................................................................16

21 C.F.R. part 630 .......................................................................16

21 C.F.R. § 1240.61(a) .................................................................16

21 C.F.R. § 1250.27 .....................................................................16

21 C.F.R. § 1250.35 .....................................................................17

21 C.F.R. § 1250.38 .....................................................................17

21 C.F.R. part 1271 ....................................................................... 5
   21 C.F.R. § 1271.80 .................................................................17

42 C.F.R. § 70.2 ............................................................................ 5

42 C.F.R. § 70.9 ...........................................................................16

42 C.F.R. § 70.10 .........................................................................16

42 C.F.R. § 71.3 ...........................................................................16

**Rule:**

Fed. R. Civ. P. 23(c)(1)(A) ........................................................... 33

**Other Authorities:**

*Ban on Sale and Distribution of Small Turtles*,
  40 Fed. Reg. 22, 543 (May 23, 1975).........................................16

CDC:
  *CDC Mask Order Remains in Effect and CDC Realigns Travel
    Health Notice System* (Apr. 13, 2022),
    https://perma.cc/NV88-3PH9 .............................................. 7
  *CDC Statement on Masks in Public Transportation Settings*
    (Apr. 20, 2022), https://perma.cc/35NJ-WDK6 ............................... 7

*Control of Communicable Diseases; Restrictions on
  African Rodents, Prairie Dogs, and Certain Other Animals*,
  68 Fed. Reg. 62,353 (Nov. 4, 2003).........................................17

Paul French, *In the 1918 Flu Pandemic, Not Wearing a
  Mask Was Illegal in Some Parts of America.  What Changed?*, CNN,
  https://perma.cc/WL95-2WDF (last updated Apr. 4, 2020) ...................14

Funk & Wagnalls New Standard Dictionary of the English Language
  (Isaac K. Funk et al. eds., 1946) .................................................14

J. Moore et al., *Moore's Federal Practice* (3d ed. 2011)............................. 28

*Reorganization Plan No. 3 of 1966*,
  31 Fed. Reg. 8855 (June 25, 1966), *reprinted in*
  80 Stat. 1610 (1966) ...................................................................... 5

*Requirement for Persons To Wear Masks While on
  Conveyances and at Transportation Hubs*,
  86 Fed. Reg. 8025 (Feb. 3, 2021)... 1, 2, 6, 7, 8, 9, 21, 22, 23, 24, 25, 26, 27

Sanitation, *Merriam-Webster*,
  https://perma.cc/9ARR-YKYH...............................................................14

*Why Doctors Wear Masks*, Yale Medicine
    (Sept. 1, 2020), https://perma.cc/TE77-8PBH ........................................14

## INTRODUCTION

The Centers for Disease Control and Prevention (CDC) order at issue here generally requires people to wear masks when traveling on public transportation (such as airplanes, buses, and trains) and at transportation hubs to prevent the spread of COVID-19. *Requirement for Persons To Wear Masks While on Conveyances and at Transportation Hubs*, 86 Fed. Reg. 8025, 8026 (Feb. 3, 2021). This order falls easily within the CDC's statutory authority.

As the Supreme Court recently explained, Section 361(a) of the Public Health Service Act authorizes the CDC to require measures that "directly relate to preventing the interstate spread of disease by identifying, isolating, and destroying the disease itself." *Alabama Ass'n of Realtors v. Department of Health & Human Servs.*, 141 S. Ct. 2485, 2488 (2021) (per curiam). That is precisely what the transportation mask order does: masks isolate the disease itself by trapping viral particles exhaled by infected travelers and preventing non-infected travelers from inhaling viral particles. The CDC's statutory authority explicitly encompasses "sanitation" measures and "other" similar measures and—as the district court recognized—a mask is a conventional sanitation measure. Dkt. No. 53, at 12-13. The plain text of Section 361(a) and longstanding agency

practice foreclose the district court's ruling that Section 361(a) does not allow "preventative" measures, *id.* at 15, and its ruling that measures authorized by Section 361(a) must be directed toward property rather than toward individuals, *id.* at 20-25.

The district court's additional rulings that the CDC order is arbitrary and capricious and procedurally invalid echo the claims that the Supreme Court rejected in *Biden v. Missouri*, 142 S. Ct. 647 (2022) (per curiam), and should be reversed for the same reasons. There, the Supreme Court emphasized that "the role of courts in reviewing arbitrary and capricious challenges is to simply ensure that the agency has acted within a zone of reasonableness." *Id.* at 654 (alteration and quotation marks omitted). The CDC order plainly meets that standard. For example, although the district court suggested that the CDC should have considered "social distancing" or "frequent handwashing" instead of masks, Dkt. No. 53, at 48 (quoting 86 Fed. Reg. at 8026), the CDC explained that "[s]ocial distancing may be difficult if not impossible" under the crowded conditions of air travel and other public transportation, 86 Fed. Reg. at 8029, and the CDC's findings showed that handwashing alone does not prevent the spread of an airborne pathogen. As in *Biden v. Missouri*, the agency's findings also demonstrated

2

good cause to make the order effective without delay, rather than allow preventable infections and deaths during a period of notice and comment.

The district court compounded its errors by issuing nationwide relief. Another judge in the same district recently upheld the CDC's transportation mask order. *See Wall v. CDC*, No. 21-975, 2022 WL 1619516 (M.D. Fla. Apr. 29, 2022), *appeal pending*, No. 22-11532 (11th Cir.). There was no sound reason for the judge in this case to preempt that ruling or the similar cases that are pending within other circuits.[1] Bedrock principles of standing, equity, comity, and judicial restraint should have led the district court to confine any relief to the five individuals who identified themselves in this case.

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. § 1331. Dkt. No. 39, at 7, ¶ 19. The district court entered final judgment on April 18, 2022. Dkt. No. 54. The government filed a timely notice of appeal

---

[1] *See, e.g.*, *Carlin v. CDC*, No. 22-800 (D.D.C.); *Seklecki v. CDC*, No. 22-10155 (D. Mass.); *Doe v. U.S. Dep't of Transp.*, No. 22-402 (W.D. Pa.); *Andreadakis v. CDC*, No. 22-52 (E.D. Va.); *Bigtree v. CDC*, No. 22-224 (W.D. Tex.); *Massie v. CDC*, No. 22-31 (W.D. Ky.); *Mahwikizi v. CDC*, No. 21-3467 (N.D. Ill. Mar. 1, 2022), *appeal pending*, No. 22-1776 (7th Cir.); *Marcus v. CDC*, No. 22-2383 (C.D. Cal.); *Trocano v. CDC*, No. 22-727 (D. Colo.).

on April 20, 2022.  Dkt. No. 55.  This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

The CDC order at issue here generally requires that people wear masks on public transportation and in transportation hubs to prevent the spread of COVID-19.  The questions presented are:

1.    Whether the district court erred in holding that the transportation mask order exceeds the CDC's statutory authority.

2.    Whether the district court erred in declaring the transportation mask order to be arbitrary and capricious and procedurally invalid.

3.    Whether the district court erred in entering nationwide relief.

## STATEMENT OF THE CASE

## I.    Statutory Background

Section 361(a) of the Public Health Service Act authorizes the Secretary of Health and Human Services (HHS) to "make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession."  42 U.S.C. § 264(a).  The next sentence of that provision "informs the grant of authority by illustrating the kinds of measures that could be necessary."  *Alabama Ass'n of Realtors v.*

4

*Department of Health & Human Servs.*, 141 S. Ct. 2485, 2488 (2021) (per curiam).  It specifies that, in making and enforcing such regulations, the Secretary may provide for "such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary." 42 U.S.C. § 264(a).  These enumerated measures "directly relate to preventing the interstate spread of disease by identifying, isolating, and destroying the disease itself."  *Alabama Ass'n of Realtors*, 141 S. Ct. at 2488.[2]

Pursuant to delegations from the Secretary, the authorities conferred by Section 361 are exercised by the CDC and the Food and Drug Administration (FDA), which are divisions of HHS.  *See, e.g.*, 42 C.F.R. § 70.2 (CDC regulations); 21 C.F.R. part 1271 (FDA regulations).

## II.    The CDC's Transportation Mask Order

The CDC order at issue here generally requires people to wear masks over the mouth and nose when traveling on conveyances (such as airplanes,

---

[2] The statute originally assigned authority to the Surgeon General, but these statutory powers and functions were later transferred to the Secretary of Health, Education, and Welfare, now the HHS Secretary.  *See Reorganization Plan No. 3 of 1966*, 31 Fed. Reg. 8855 (June 25, 1966), *reprinted in* 80 Stat. 1610 (1966); *see also* 20 U.S.C. § 3508(b).

trains, subways, buses, taxis, ride-shares, and ships) into or within the
United States and at transportation hubs (such as airports, bus terminals,
and subway stations).  86 Fed. Reg. at 8026-27.  The order exempts
children under age 2 and anyone with a disability who cannot wear a mask
or cannot safely wear a mask.  *Id.* at 8027.  The mask requirement does not
apply "for brief periods" while a person is eating, drinking, or taking
medication, *id.*, nor does it apply to private conveyances operated for
personal, non-commercial use, *id.* at 8028.

In issuing the order, the CDC explained that wearing a mask is "one of
the most effective strategies available for reducing COVID-19
transmission."  86 Fed. Reg. at 8026.  Because the virus is often
transmitted through airborne droplets "produced when an infected person
coughs, sneezes, or talks," masks provide a barrier that blocks uninfected
people from breathing in the virus and infected people from spreading the
virus to others.  *Id.* at 8028.  This source control is especially important "for
asymptomatic or pre-symptomatic infected wearers who feel well and may
be unaware of their infectiousness" but by some estimates account for more
than half of all transmissions.  *Id.*

The CDC further described the particular reasons for requiring masks
on airplanes, on other public transportation, and at transportation hubs.

6

The CDC explained that in these settings, "[s]ocial distancing may be difficult if not impossible," and people are forced to be "in close contact with others, often for prolonged periods."  86 Fed. Reg. at 8029; *see also id.* (describing comparable exposure risks "in security lines and crowded airport terminals").  Scientific data demonstrates that the risk of COVID-19 transmission increases "the more closely an infected person interacts with others and the longer those interactions."  *Id.* at 8028.  "[G]iven how interconnected most transportation systems are across the nation and the world," localized cases can rapidly grow "into interstate and international transmission when infected persons travel on non-personal conveyances without wearing a mask."  *Id.* at 8029.

The CDC recently found that "requiring masking in the indoor transportation corridor remains necessary for the public health."  CDC, *CDC Statement on Masks in Public Transportation Settings* (Apr. 20, 2022), https://perma.cc/35NJ-WDK6.  The CDC noted increases in the 7-day moving average of cases in the United States that were due in large part to the highly transmissible Omicron variant, whose BA.2 subvariant made up more than 85% of U.S. cases at the time.  CDC, *CDC Mask Order Remains in Effect and CDC Realigns Travel Health Notice System* (Apr. 13, 2022), https://perma.cc/NV88-3PH9.

Although the CDC order could theoretically have been enforced through criminal penalties, the CDC indicated at the outset that it did not intend to rely on criminal penalties and instead anticipated widespread voluntary compliance.  86 Fed. Reg. at 8030 n.33.  The Transportation Security Administration (TSA) also issued a series of security directives to assist with the implementation and enforcement of the CDC's mask order, which the D.C. Circuit upheld on direct review.  *See Corbett v. TSA*, 19 F.4th 478, 480 (D.C. Cir. 2021).[3]

## III.   District Court Proceedings

The individual plaintiffs in this case are Ana Carolina Daza and Sarah Pope.  Ms. Daza's declaration states that she wishes to fly from Florida to Colombia; that she has been diagnosed with anxiety; and that she has obtained a note from her physician excusing her from wearing a mask.  Dkt. No. 48-2.  Similarly, Ms. Pope's declaration states that she has suffered from panic attacks in the past and has forgone flights to Hawaii and Great Britain due to health concerns related to wearing a mask.  Dkt. No. 48-3.  Although the CDC's transportation mask order does not apply to individuals who cannot wear a mask because of a disability as defined by

---

[3] TSA rescinded an extension of its directives in light of the district court's decision in this case.  The TSA directives are not subject to district court review and are not at issue here.

the Americans with Disabilities Act, *see* 86 Fed. Reg. at 8027, neither plaintiff claimed to have requested an exemption from the mask order's requirements.

The organizational plaintiff is Health Freedom Defense Fund, Inc. Three of its members identified themselves in the district court proceedings. Dkt. No. 39-4 (declarations of Kelly Pratt, Paula Jager, and Peter Kennedy). Their declarations indicated that they object to being required to wear a mask on airplanes. *Id.*

Plaintiffs challenged the CDC's transportation mask order on various statutory and constitutional grounds. On cross-motions for summary judgment, the district court vacated the transportation mask order nationwide. *See* Dkt. No. 54, at 2; *see also* Dkt. No. 53, at 57-58. The district court ruled that the order exceeded the CDC's statutory authority; that it was arbitrary and capricious; and that the CDC could not issue the order without first going through notice-and-comment rulemaking. Dkt. No. 53, at 58.

## IV.   Standard Of Review

The district court's summary judgment decision is subject to de novo review in this Court. *Brown v. Nexus Bus. Sols., LLC*, 29 F.4th 1315, 1317 (11th Cir. 2022).

## SUMMARY OF ARGUMENT

**I.**  The CDC order at issue here generally requires that people wear masks on public transportation and in transportation hubs to prevent the spread of COVID-19.  That order falls easily within the CDC's statutory authority, which includes measures that "directly relate to preventing the interstate spread of disease by identifying, isolating, and destroying the disease itself." *Alabama Ass'n of Realtors v. Department of Health & Human Servs.*, 141 S. Ct. 2485, 2488 (2021) (per curiam).  Masks do exactly that: they isolate the disease itself by trapping viral particles exhaled by infected travelers and preventing non-infected travelers from inhaling viral particles.

The CDC's statutory authority explicitly encompasses "sanitation" measures and—as the district court itself recognized—a mask is a conventional sanitation measure.  The district court's observation that "sanitation in the context of garbage disposal, sewage and plumbing" typically refers to "direct cleaning of a dirty or contaminated object," Dkt. No. 53, at 18, is not a sound reason to adopt a cramped reading of a statute aimed at preventing the spread of communicable disease.  And the court's ruling that the measures issued under Section 361(a) may be directed only

10

at "property" rather than "individuals," Dkt. No. 53, at 24, is contrary to the statute's plain text and longstanding agency regulations.

**II.** The rest of the district court's rulings replicate the errors that the Supreme Court identified in *Biden v. Missouri*, 142 S. Ct. 647 (2022) (per curiam), which upheld the Centers for Medicare & Medicaid Services (CMS) requirement that workers at federally funded healthcare facilities be vaccinated against COVID-19 (subject to exemptions). There, the Supreme Court emphasized that the role of a court in reviewing an arbitrary and capricious claim is simply to ensure that the agency acted within a zone of reasonableness. The district court here nonetheless declared it arbitrary and capricious for the CDC to rely on masks rather than measures such as "social distancing," "testing," and "occupancy limits." But the CDC order explained that social distancing is difficult if not impossible in crowded settings such as airplanes, buses, and transportation hubs; that the virus that causes COVID-19 can be spread by people who are asymptomatic; and that mask wearing is a simple, effective strategy that is less disruptive to domestic travel than testing or separating passengers.

The findings in the CDC order likewise provide ample support for the agency's determination that there was good cause to make the order effective without delay. In issuing the order, the CDC explained that the

11

virus that causes COVID-19 had by then killed nearly half a million Americans and that new variants had recently emerged, including one with evidence of increased transmissibility. Accordingly, the CDC made immediately effective an order that was explicitly designed to preserve human life and maintain the safety of the transportation system.

**III.** The district court compounded its errors by entering nationwide relief. Article III and traditional principles of equity dictate that any remedy must be limited to redressing plaintiffs' particular injuries. Principles of comity and judicial restraint confirm that the district court should not have preempted the recent ruling by another judge upholding the CDC's transportation mask order or the similar cases pending within other circuits. These principles should have led the district court to confine any relief to the five individuals identified in plaintiffs' filings below.

## ARGUMENT

## I. The Transportation Mask Order Is Within The CDC's Statutory Authority

### A. Section 361(a) Expressly Authorizes Sanitation Measures, And Masks Are A Conventional Sanitation Measure

The transportation mask order falls easily within the CDC's statutory authority, which, the Supreme Court explained, includes measures that "directly relate to preventing the interstate spread of disease by identifying,

isolating, and destroying the disease itself." *Alabama Ass'n of Realtors v. Department of Health & Human Servs.*, 141 S. Ct. 2485, 2488 (2021) (per curiam). That is precisely what the transportation mask order does: masks isolate the disease itself by trapping viral particles exhaled by infected travelers and preventing non-infected travelers from inhaling viral particles. *See Wall v. CDC*, No. 21-975, 2022 WL 1619516, at *6 (M.D. Fla. Apr. 29, 2022), *appeal pending*, No. 22-11532 (11th Cir.).

Section 361(a) of the Public Health Service Act authorizes the Secretary to "make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession." 42 U.S.C. § 264(a). The next sentence of that provision "informs the grant of authority by illustrating the kinds of measures that could be necessary." *Alabama Ass'n of Realtors*, 141 S. Ct. at 2488. Whatever the outer bounds of this authority, it explicitly includes "sanitation" measures and "other measures" akin to the enumerated measures. 42 U.S.C. § 264(a).

Masking is a paradigmatic sanitation measure, as the district court acknowledged. *See* Dkt. No. 53, at 13. Masks reduce the release of viral

13

particles into the air, which easily meets the modern and contemporaneous definition of "sanitation" as "the promotion of hygiene and prevention of disease by maintenance of sanitary conditions." Sanitation, *Merriam-Webster*, https://perma.cc/9ARR-YKYH; Funk & Wagnalls New Standard Dictionary of the English Language 2172 (Isaac K. Funk et al. eds., 1946) (defining "sanitation" as "[t]he devising and applying of measures for preserving and promoting public health; the removal or neutralization of elements injurious to health; the practical application of sanitary science"). Accordingly, "doctors have been wearing medical-grade N95 or surgical masks . . . during surgeries or patient interactions as part of their daily routines, for many decades." *Why Doctors Wear Masks*, Yale Medicine (Sept. 1, 2020), https://perma.cc/TE77-8PBH. And "the United States . . . led the world in mask wearing" to prevent the spread of the 1918 flu pandemic. Paul French, *In the 1918 Flu Pandemic, Not Wearing a Mask Was Illegal in Some Parts of America. What Changed?*, CNN, https://perma.cc/WL95-2WDF (last updated Apr. 4, 2020).

Furthermore, the temporary requirement to wear masks on public transportation is comparable to (or more modest than) the measures enumerated in Section 361(a). It is thus among the "other measures" authorized by the second sentence of Section 361(a). The district court

14

itself recognized that Section 361(a) authorizes measures that "involve identifying and eliminating known sources of disease." Dkt. No. 53, at 16. The transportation mask requirement "eliminate[s] known sources of disease," *id*., by preventing infected people from exhaling viral particles into shared airspaces and preventing non-infected people from inhaling viral particles. It is difficult to imagine a more direct way to control the spread of communicable disease than a measure that traps infectious particles to prevent their spread.

> ### B.    The District Court's Rulings Are Contrary To Section 361(a)'s Plain Text And Longstanding Agency Regulations

1. The district court offered no sound basis for ruling otherwise. Its pronouncement that the CDC cannot rely on "preventative measures," Dkt. No. 53, at 26, contravenes the statute's plain text: Section 361(a) expressly authorizes measures "*to prevent*" the spread of communicable disease. 42 U.S.C. § 264(a) (emphasis added). Taking preventative measures is part of the CDC's core mission. It is embodied in the name of the agency—Centers for Disease Control *and Prevention*. It makes no sense to suggest that the agency would not incorporate preventative measures in the actions it undertakes. The district court's observation that "sanitation in the context of garbage disposal, sewage and plumbing" typically refers to "direct

cleaning of a dirty or contaminated object," Dkt. No. 53, at 18, is not a reason to import that concept when interpreting a statute designed to prevent the spread of communicable disease.

Unsurprisingly, many CDC and FDA measures issued pursuant to Section 361(a) are preventative in nature. For example, regulations issued under Section 361(a) require that perishable food or drink on interstate conveyances be stored at or below 50 degrees, 21 C.F.R. § 1250.27; prohibit the interstate sale of milk products made with unpasteurized dairy ingredients, *id.* § 1240.61(a); impose detailed requirements for current good manufacturing practices and other criteria for blood and blood components, *id.* parts 606, 630; and impose detailed requirements to prevent salmonella in eggs, *id.* part 118.

Similarly, regulations issued under Section 361(a) authorize "prevention measures" to detect the presence of communicable disease at transportation hubs. 42 C.F.R. § 70.10. The regulations that provide for vaccination clinics are an exercise of authority under Section 361(a). *Id.* §§ 70.9, 71.3. The turtle-sale ban that the district court cited with approval (Dkt. No. 53, at 29) was itself a preventative measure, encompassing healthy and infected turtles alike. *See Ban on Sale and Distribution of Small Turtles*, 40 Fed. Reg. 22,543 (May 23, 1975); *Louisiana v. Mathews*,

16

427 F. Supp. 174, 175-76 (E.D. La. 1977) (rejecting the plaintiff's claim that only infected turtles may be banned).  Similarly, the Section 361(a) authority has been used to prohibit the capture, distribution, or release of certain animals to prevent the spread of monkeypox.  *See Control of Communicable Diseases; Restrictions on African Rodents, Prairie Dogs, and Certain Other Animals*, 68 Fed. Reg. 62,353 (Nov. 4, 2003).

2.  The district court's alternative ruling that measures issued under Section 361(a) may be directed only at "property" rather than at "individuals," Dkt. No. 53, at 24, is likewise contrary to the statute's plain text and longstanding agency practice.  The word "property" does not appear anywhere in Section 361(a), which is broadly titled "Promulgation and enforcement by Surgeon General."  And the Section 361(a) authority has long been used for measures directed to individuals.  For example, regulations issued under Section 361(a) require that individuals be tested for communicable disease before donating cells or tissue.  21 C.F.R. § 1271.80.  They prohibit any person who is known or suspected of having a communicable disease from engaging in the preparation, handling, or serving of food on interstate conveyances.  *Id.* § 1250.35.  And they require signs directing food-handling employees to wash their hands after each use of toilet facilities on those conveyances.  *Id.* § 1250.38.

In short, the district court's declaration that Section 361 is "divided into two parts"—with paragraph (a) authorizing only measures directed at property, Dkt. No. 53, at 20—is baseless.  In so ruling, the district court mistakenly relied on a preliminary ruling of the Sixth Circuit in a case involving the eviction moratorium.  *See Tiger Lily, LLC v. U.S. Dep't of Hous. & Urban Dev.*, 992 F.3d 518, 522 (6th Cir. 2021).  The Sixth Circuit did not embrace that reasoning in its merits decision in that case.  *See Tiger Lily, LLC v. U.S. Dep't of Hous. & Urban Dev.*, 5 F.4th 666, 669-71 (6th Cir. 2021).  Nor did the Supreme Court in its subsequent opinion.  *See Alabama Ass'n of Realtors*, 141 S. Ct. at 2488.  Instead, the Supreme Court held that Section 361(a) authorizes measures that "directly relate to preventing the interstate spread of disease by identifying, isolating, and destroying the disease itself."  *Id.*  As explained above, the transportation mask order does exactly that.

3.  The district court's observation that "sanitation" measures overlap with other measures enumerated in Section 361(a), *see* Dkt. No. 53, at 18-19, is unremarkable:  Congress often uses "overlapping, illustrative terms" to "enlarge, rather than to confine, the scope of the agency's power to regulate."  *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 862 (1984); *see, e.g., Babbitt v. Sweet Home Chapter of Communities*

*for a Great Or.*, 515 U.S. 687, 703 (1995) ("Any overlap that § 5 or § 7 may have with § 9 in particular cases is unexceptional . . . and simply reflects the broad purpose of the Act[.]").  Here, Section 361(a)'s second sentence explicitly authorizes the CDC to take "other measures" similar to the ones enumerated.  Indeed, the "direct cleaning" definition that the district court attributed to "sanitation" would overlap with "disinfection," which is another measure enumerated in Section 361(a).  The district court's observation that other paragraphs of Section 361 impose limits on the apprehension, detention, examination, and conditional release of individuals, *see* Dkt. No. 53, at 23-24 (discussing 42 U.S.C. § 264(b)-(d)), is irrelevant because the transportation mask order does not authorize such measures.

The district court was plainly wrong to suggest that the transportation mask order raises concerns under the so-called "major questions doctrine" akin to those raised by the eviction moratorium.  Dkt. No. 53, at 26-27. Whereas the eviction moratorium was novel, masks are a longstanding means to prevent the spread of communicable disease.  Whereas the eviction moratorium imposed a large economic burden on landlords, *see Alabama Ass'n of Realtors,* 141 S. Ct. at 2489, the mask requirement places "negligible" (if any) financial burdens on travelers, *Wall*, 2022 WL 1619516,

19

at *4.  And whereas the eviction moratorium addressed a matter of traditional state concern (landlord-tenant relations), *see Alabama Ass'n of Realtors,* 141 S. Ct. at 2489, the order at issue here addresses the nation's transportation system, which is an area of traditional federal jurisdiction. *See Corbett v. TSA*, 19 F.4th 478, 480 (D.C. Cir. 2021) (noting that the COVID-19 pandemic poses "one of the greatest threats to the operational viability of the transportation system and the lives of those on it seen in decades").

## II.    The Transportation Mask Order Is Not Arbitrary And Capricious Or Procedurally Invalid

### A.    The CDC Reasonably Found Masks Necessary To Prevent The Spread Of COVID-19 On Public Transportation And At Transportation Hubs

The CDC amply satisfied its obligation to "examine the relevant data and articulate a satisfactory explanation for" its judgment that the mask order is necessary to prevent the spread of COVID-19 in transportation corridors.  *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  As the Supreme Court in *Biden v. Missouri* stressed in upholding CMS's COVID-19 vaccination requirement for healthcare workers in federally funded facilities, "the role of courts in reviewing arbitrary and capricious challenges is to 'simply ensur[e] that the agency has acted within a zone of reasonableness.'"  142 S. Ct. 647, 654

(2022) (per curiam) (alteration in original) (quoting *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021)). The CDC's transportation mask order clearly meets that standard.

The CDC detailed its rationale for requiring people to wear masks in transportation hubs and conveyances. 86 Fed. Reg. at 8026-27. Citing studies analyzing the effects of masking on infection and mortality rates, the CDC explained that wearing a mask is "one of the most effective strategies available for reducing COVID-19 transmission," particularly given that "asymptomatic or pre-symptomatic infected wearers who feel well and may be unaware of their infectiousness" account for more than half of all transmissions by some estimates. 86 Fed. Reg. at 8028-29. The CDC further described the significant exposure risk in indoor transportation settings where people are forced to be "in close contact with others, often for prolonged periods," as they stand in security lines, wait at crowded transportation hubs, and sit aboard multi-person conveyances. *Id.* at 8029; *cf. Competitive Enter. Inst. v. U.S. Dep't of Transp.*, 863 F.3d 911, 919 (D.C. Cir. 2017) (noting in the context of e-cigarette vapor that airline passengers have little ability to protect themselves due to "the involuntary nature of secondhand exposure" in these confined spaces (quotation marks omitted)).

The COVID-19 pandemic is "exactly the type of situation" in which a court "should refrain from imposing its own judgment and give appropriate deference to the agency's scientific expertise in determining the best way to stem the spread of the unprecedented disease." *Wall*, 2022 WL 1619516, at *8. None of the district court's quarrels with the CDC order comes close to showing that the CDC has acted outside the "zone of reasonableness." *Biden v. Missouri*, 142 S. Ct. at 654 (quoting *Prometheus Radio Project*, 141 S. Ct. at 1158). For example, the district court declared that the CDC did not adequately consider alternatives like "testing, temperature checks, or occupancy limits in transit hubs and conveyances." Dkt. No. 53, at 48. But the CDC explained that mask wearing is a simple, effective strategy that is less disruptive to domestic travel than testing or separating passengers. *See* 86 Fed. Reg. at 8030 (characterizing "requiring a negative result from a SARS-CoV-2 viral test" and "imposing requirements for social distancing" as "more restrictive" than the mask order). And the CDC's reasoning underscored the limitations of the district court's proposed alternatives. For instance, temperature checks may not identify "pre-symptomatic or asymptomatic" individuals, *id*. at 8028, and occupancy limits may not maintain "the recommended 6 feet" of distance between people when traveling, *id*. at 8029.

22

The district court's other quibbles with the transportation mask order are similarly flawed. The court's suggestion that the CDC should have required "social distancing," Dkt. No. 53, at 48 (quoting 86 Fed. Reg. at 8026), disregarded the agency's explanation that "[s]ocial distancing may be difficult if not impossible" when people are on airplanes, in crowded security lines or airport terminals, or on other multi-person conveyances, 86 Fed. Reg. at 8029. The court's suggestion that the CDC should have required "frequent handwashing," Dkt. No. 53, at 48 (quoting 86 Fed. Reg. at 8026), disregarded the practicalities of travel and the scientific evidence showing that airborne viral droplets are the primary means of transmission, *see* 86 Fed. Reg. at 8028. The court's questioning of the efficacy of masks, Dkt. No. 53, at 48, disregarded the CDC's extensive "guidance for attributes of acceptable masks," including that they be "a solid piece of material" and "fit snugly" against the wearer's face, 86 Fed. Reg. at 8027 n.6.

As in *Biden v. Missouri*, there is no plausible contention that the exceptions to the mask requirement render it useless in curbing the spread of COVID-19. States that have imposed masking requirements in public spaces and on public transit have included similar exceptions for children, persons with disabilities, and activities like eating. *See* 86 Fed. Reg. at 8029 n.29 (citing a report of state-by-state mask requirements). Moreover,

23

the exceptions in the CDC's transportation mask order are tailored to minimize the risks of transmission.  For example, allowing people to remove their masks "for brief periods" when eating or drinking and "temporarily" when unable to breathe, 86 Fed. Reg. at 8027 & n.7, is consistent with the goal of reducing COVID-19 spread in transportation settings.  In short, the CDC "reasonably considered the relevant issues and reasonably explained the decision." *Prometheus Radio Project*, 141 S. Ct. at 1158.

### B. The CDC Reasonably Found Good Cause To Make The Order Effective Without Delay

The CDC's findings likewise established good cause to proceed without advance notice and comment, assuming that those procedures were required.  *See* 5 U.S.C. § 553(b)(B).  "The highly contagious character and the devastating effects of the SARS-CoV-2 virus demanded expeditious action by the CDC." *Wall*, 2022 WL 1619516, at *10.

The CDC explained that "[a]s of January 27, 2021, there ha[d] been over 25,000,000 cases identified in the United States and over 415,000 deaths due to the disease." 86 Fed Reg. at 8028.  In addition to "the rapid and continuing transmission of the virus across all states," the CDC described the recent emergence of "[n]ew SARS-CoV-2 variants," "including at least one with evidence of increased transmissibility." *Id.* at

24

8028-29. And the CDC emphasized the "interconnected" nature of "transportation systems," where "local transmission can grow even more quickly into interstate and international transmission when infected persons travel on non-personal conveyances without wearing a mask." *Id.* at 8029. "Considering the public health emergency caused by COVID-19," the CDC determined that "it would be impracticable and contrary to the public's health, and by extension the public's interest, to delay the issuance and effective date of" the transportation mask order. *Id.* at 8030. These findings provide the requisite "brief statement of reasons," 5 U.S.C. § 553(b)(B), and constitute "the 'something specific' required to forgo notice and comment," *Biden v. Missouri*, 142 S. Ct. at 654 (citation omitted).

The district court accepted the CDC's determination that "requiring masks will limit COVID-19 transmission and will thus decrease the serious illnesses and death that COVID-19 occasions," Dkt. No. 53, at 43, but nonetheless deemed insufficient the agency's finding of good cause. The court reached that counterintuitive conclusion by ignoring the detailed description of contemporaneous pandemic conditions that underlie the CDC's determination that "delay would do real harm," *United States v. Dean*, 604 F.3d 1275, 1281 (11th Cir. 2010). The very cases on which the

district court relied, Dkt. No. 53, at 36-38, recognize that good cause is present where, as here, "delay would imminently threaten life," *Sorenson Commc'ns Inc. v. FCC*, 755 F.3d 702, 706 (D.C. Cir. 2014).

The CDC's explicit discussion of the high risk of COVID-19 transmission in transportation settings undermines the district court's statement that the CDC did not "identif[y] specific reasons why in the environment of [the regulation] the ongoing pandemic constituted good cause." Dkt. No. 53, at 43 (alterations in original) (quoting *Florida v. Department of Health & Human Servs.*, 19 F.4th 1271, 1290 (11th Cir. 2021)). The CDC explained that travelers are "in close contact with others, often for prolonged periods," in transportation hubs and conveyances. 86 Fed. Reg. at 8029; *see also Corbett*, 19 F.4th at 488 (recognizing COVID-19's "specific tendency to spread at high rates in transportation areas"). And the CDC explained that local cases can quickly expand to national and global spread "given how interconnected most transportation systems are." 86 Fed. Reg. at 8029.

Contrary to the district court's suggestion, Dkt. No. 53, at 38-39, the length of the pandemic does not call into question the CDC's good cause finding. The Supreme Court upheld an analogous finding of good cause for a vaccination requirement issued over a year and a half after the pandemic

began. *Biden v. Missouri*, 142 S. Ct. at 654 (reciting the agency's finding that "accelerated promulgation of the rule . . . would significantly reduce COVID-19 infections, hospitalizations, and deaths"). Like the CMS vaccination rule, the CDC's mask order relied on the emergence of COVID-19 variants with increased transmissibility, which threatened to spread rapidly and infect the traveling public. *See* 86 Fed. Reg. at 8028; *see also Livingston Educ. Serv. Agency v. Becerra*, --- F.4th ---, No. 22-1257, 2022 WL 1594779, at *1 (6th Cir. May 20, 2022) (upholding good cause finding for HHS rule requiring staff in the federally funded Head Start program to be vaccinated against COVID-19). The district court's objection that the CDC took too long to issue the mask order (which was issued nine months before the CMS vaccination requirement), Dkt. No. 53, at 39, echoes the argument that the Supreme Court rejected in *Biden v. Missouri*, 142 S. Ct. at 654, and fails for the same reason.

## III.  The District Court Erred In Issuing Nationwide Relief

### A.  Nationwide Relief Contravenes Bedrock Principles Of Standing, Equity, Comity, And Judicial Restraint

The district court compounded its errors by issuing nationwide relief. There was no basis for the district court to preempt the ruling in *Wall* or the similar cases pending within the D.C., First, Third, Fourth, Fifth, Sixth,

Seventh, Ninth, and Tenth Circuits.  *See supra* p. 3 n.1.  As the judge in
*Wall* observed when registering its disagreement with the district court's
decision in this case, a "district court cannot be said to be bound by a
decision of one of its brother or sister judges."  *Wall*, 2022 WL 1619516, at
*2 n.11 (quoting *Fishman & Tobin, Inc. v. Tropical Shipping & Constr. Co.*,
240 F.3d 956, 965 (11th Cir. 2001)).  Whereas decisions of the Supreme
Court establish nationwide precedent, and the binding precedent of a court
of appeals governs within that circuit, "[a] decision of a federal district
court judge is not binding precedent in either a different judicial district,
the same judicial district, or even upon the same judge in a different case."
*Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (quoting 18 J. Moore et
al., *Moore's Federal Practice* § 134.02[1][d], at 134-26 (3d ed. 2011)); *see
also Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 430 n.10
(1996) ("If there is a federal district court standard, it must come from the
Court of Appeals.").

　　Article III requires that "[a] plaintiff's remedy must be tailored to
redress the plaintiff's particular injury."  *Gill v. Whitford*, 138 S. Ct. 1916,
1934 (2018).  When a court orders "the government to take (or not take)
some action with respect to those who are strangers to the suit, it is hard to
see how the court could still be acting in the judicial role of resolving cases

28

and controversies." *Department of Homeland Sec. v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring).  These constitutional limitations are reinforced by traditional principles of equity, which dictate that relief should be "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).

Nationwide relief takes a "toll on the federal court system." *Trump v. Hawaii*, 138 S. Ct. 2392, 2425 (2018) (Thomas, J., concurring).  As this Court recently explained, such relief "undermines the judicial system's goals of allowing the 'airing of competing views' and permitting multiple judges and circuits to weigh in on significant issues." *Florida*, 19 F.4th at 1283 (quoting *Department of Homeland Sec.*, 140 S. Ct. at 600 (Gorsuch, J., concurring)).  Such relief thus undercuts the Supreme Court's decision in *United States v. Mendoza*, 464 U.S. 154 (1984), where, in holding that the government is not subject to nonmutual offensive collateral estoppel, the Court reasoned that "[a]llowing only one final adjudication would deprive" it "of the benefit it receives from permitting several courts of

appeals to explore a difficult question before th[e] Court grants certiorari."
*Id.* at 160.[4]

Nationwide relief also has the perverse effects of "encouraging forum shopping, and making every case a national emergency for the courts and for the Executive Branch." *Hawaii*, 138 S. Ct. at 2425 (Thomas, J., concurring). It impedes the government's ability to implement its policies because the government must "prevail in all 94 district courts and all 12 regional courts of appeals" while one plaintiff can derail a nationwide policy with a single victory. *Arizona v. Biden*, 31 F.4th 469, 484 (6th Cir. 2022) (Sutton, C.J., concurring). And it may erode confidence in the Judiciary by creating an impression that an Article III judge, who is unaccountable due to life tenure, is setting national policy. "All in all, nationwide injunctions have not been good for the rule of law." *Id.* at 485.

_____

[4] *See also Gun Owners of Am., Inc. v. Garland*, 992 F.3d 446, 474 (6th Cir.) (observing that cutting off the development of the law in different jurisdictions eliminates the "value in having legal issues 'percolate' in the lower courts"), *vacated on other grounds,* 19 F.4th 890 (6th Cir. 2021) (en banc); *Holland v. National Mining Ass'n*, 309 F.3d 808, 815 (D.C. Cir. 2002) ("Allowing one circuit's statutory interpretation to foreclose . . . review of the question in another circuit would squelch the circuit disagreements that can lead to Supreme Court review.").

**B.    The District Court Provided No Sound Basis For Departing From These Principles**

The principles discussed above should have led the district court to confine its relief to the five individuals identified below.  As the district court stated in this very case, "[t]he better approach—and one arguably more consistent with Article III—is narrowly crafted equitable relief remedying only the harms of the parties before the district court, allowing for potentially divergent adjudications that promote judicial dialog [sic]." Dkt. No. 35, at 16.  The district court offered no persuasive reason for ruling more broadly.  The court declared that "vacatur . . . is the ordinary [Administrative Procedure Act (APA)] remedy."  Dkt. No. 53, at 53-54 (first alteration in original) (quoting *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1290 (11th Cir. 2015)).  But the cases cited for that proposition addressed whether courts should remand to the agency without vacating the agency action, as opposed to the proper scope of the vacatur.

"Nothing in the language of the APA" requires an unlawful regulation be "set[ ] aside . . . for the entire country."  *Virginia Soc'y for Human Life, Inc. v. Federal Election Comm'n*, 263 F.3d 379, 394 (4th Cir. 2001). Congress enacted the APA against a background rule that statutory remedies should be construed in accordance with "traditions of equity

31

practice," *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944), and courts "do not lightly assume that Congress has intended to depart from established [equity] principles," *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982). At the time of the APA's enactment, nationwide injunctions were all but unknown. *See, e.g.*, *Hawaii*, 138 S. Ct. at 2427-29 (Thomas, J., concurring) (explaining the lack of historical precedent for universal injunctions). Indeed, a 1937 report to Congress from the Attorney General recorded 1,600 separate injunctions issued against a single piece of New Deal tax legislation in just over six months, while also noting that collection of the tax from those who had not filed suits continued. S. Doc. No. 75-42, at 1, 3 (1937). The absence of such sweeping relief at that time is particularly notable given the multiple pre-APA statutes providing that courts could "set aside" agency action held unlawful. *See, e.g.*, Hepburn Act, 59 Cong. ch. 3591, sec. 15, § 4, 34 Stat. 584, 589 (1906); Act of Oct. 15, 1914, 63 Cong. ch. 323, § 11, 38 Stat. 730, 735–36; Communications Act of 1934, 73 Cong. ch. 652, §§ 402, 408, 48 Stat. 1064, 1093, 1096.

The district court alternatively declared that the "difficulty of distinguishing the named Plaintiffs from millions of other travelers" made nationwide relief appropriate. Dkt. No. 53, at 57. But there is no such difficulty. There are only two named individual plaintiffs and only three

members of the organizational plaintiff who identified themselves in the proceedings below. A court order exempting those five individuals from the transportation mask requirement should be no harder to administer than the exemptions provided by the CDC order itself.

In any event, the named plaintiffs cannot circumvent the class-action requirements of Rule 23 by seeking relief on behalf of unnamed individuals. Class actions are the "mechanism for applying a judgment to third parties," and "Rule 23 carefully lays out the procedures for permitting a district court to bind nonparties to an action." *Arizona,* 31 F.4th at 484 (Sutton, C.J., concurring). When a court decides to certify a class—which it must do at "an early practicable time" after the suit is filed, Fed. R. Civ. P. 23(c)(1)(A)—the absent class members will be bound by a favorable or unfavorable judgment, *see Califano*, 442 U.S. at 702. Nationwide relief, by contrast, amounts to an inequitable one-way class action. *See Department of Homeland Sec.*, 140 S. Ct. at 601 (Gorsuch, J., concurring); *cf. American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974) (explaining that the rule against one-way intervention prevents potential parties from "await[ing] developments in the trial or even final judgment on the merits in order to determine whether participation would be favorable to their interests").

33

**CONCLUSION**

The judgment of the district court should be reversed.

Respectfully submitted,

BRIAN M. BOYNTON
    *Principal Deputy Assistant*
        *Attorney General*

ROGER B. HANDBERG
    *United States Attorney*

ALISA B. KLEIN

 *s/ Brian J. Springer*
BRIAN J. SPRINGER
    *Attorneys, Appellate Staff*
    *Civil Division, Room 7537*
    *U.S. Department of Justice*
    *950 Pennsylvania Avenue NW*
    *Washington, DC 20530*
    *(202) 616-5446*
    *brian.j.springer@usdoj.gov*

May 2022

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7,100 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Georgia 14-point font, a proportionally spaced typeface.

*s/ Brian J. Springer*
Brian J. Springer

**CERTIFICATE OF SERVICE**

I hereby certify that on May 31, 2022, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*s/ Brian J. Springer*
Brian J. Springer