**No. 22-11287**

---

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

HEALTH FREEDOM DEFENSE FUND, INC., *et al.*,

*Plaintiffs-Appellees*,

v.

JOSEPH R. BIDEN, JR., President of the United States, *et al.*,

*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the Middle District of Florida

---

## REPLY BRIEF FOR APPELLANTS

---

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
  *Attorney General*

ROGER B. HANDBERG
  *United States Attorney*

ALISA B. KLEIN
BRIAN J. SPRINGER
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7537*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 616-5446*

*Health Freedom Defense Fund v. Biden*, No. 22-11287

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-2(b), counsel for the defendants-appellants certify that they are not aware of persons or entities with an interest in the outcome of this appeal that have been omitted from the certificate of interested persons contained in the opening brief or in any other filed brief.

## TABLE OF CONTENTS

**Page**

ARGUMENT ........................................................................................1

I.   The CDC Had Statutory Authority To Issue The Transportation
     Mask Order ................................................................................1

     A.   Masking is a conventional communicable-disease control
          measure that falls within the scope of Section 361(a) as
          interpreted by the Supreme Court ..............................................1

     B.   Plaintiffs' position is contrary to longstanding CDC and
          FDA regulations issued pursuant to Section 361(a) ...................4

II.  Plaintiffs' Remaining Challenges To The Transportation Mask
     Order Are Also Meritless ......................................................... 9

III. The District Court Compounded Its Errors By Vacating The
     CDC Order Nationwide ........................................................ 11

CONCLUSION ...............................................................................13

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF CITATIONS

**Cases:**                                                                    <u>**Page(s)**</u>

*Alabama Ass'n of Realtors v. Department of Health & Human Servs.*,
    141 S. Ct. 2485 (2021) (per curiam) ................................................ 2, 3, 5, 8

*Arizona v. Biden*,
    40 F.4th 375 (6th Cir. 2022) .................................................................11, 12

*Biden v. Missouri*,
    142 S. Ct. 647 (2022) (per curiam) .................................................. 4, 9, 10

*Corbett v. Transportation Sec. Admin.*,
    19 F.4th 478 (D.C. Cir. 2021) .................................................................... 3

*FCC v. Prometheus Radio Project*,
    141 S. Ct. 1150 (2021) ............................................................................ 10

*Fishman & Tobin, Inc. v. Tropical Shipping & Constr. Co.*,
    240 F.3d 956 (11th Cir. 2001) ...................................................................12

*Georgia v. President of the United States*,
    No. 21-14269, --- F.4th --- (11th Cir. Aug. 26, 2022) ...........................11, 12

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3d Cir. 2008) .....................................................................12

*Livingston Educ. Serv. Agency v. Becerra*,
    35 F.4th 489 (6th Cir.), *reh'g denied*,
    2022 WL 2286410 (6th Cir. June 21, 2022) ............................................. 4

*Marx v. General Revenue Corp.*,
    568 U.S. 371 (2013) .................................................................................. 8

*McAfee v. FDA*,
    36 F.4th 272 (D.C. Cir. 2022).............................................................. 5, 6

*Missouri v. Biden*,
    571 F. Supp. 3d 1079 (E.D. Mo. 2021)...................................................... 9

* Authorities upon which we chiefly rely are marked with asterisks.

*Wall v. CDC*,
   No. 21-975, 2022 WL 1619516 (M.D. Fla. Apr. 29, 2022),
   *appeal pending*, No. 22-11532 (11th Cir.) .....................................2, 3, 11, 12

*West Virginia v. EPA*,
   142 S. Ct. 2587 (2022) ..................................................................................... 8

**Statutes:**

Pub. L. No. 102-531, 106 Stat. 3469 (1992) ..................................................... 7

5 U.S.C. § 553(b)(B) ........................................................................................... 11

*42 U.S.C. § 264(a) ............................................................................................ 6

**Regulations:**

21 C.F.R. § 1250.35 ............................................................................................ 7

21 C.F.R. § 1250.38 ............................................................................................ 6

**Rule:**

Fed. R. Civ. P. 23 advisory committee's note, 2003 Amendments ...............12

**Legislative Material:**

H.R. Rep. No. 1364 (1944) ............................................................................... 4

**Other Authorities:**

*Ban on Sale and Distribution of Small Turtles*,
   40 Fed. Reg. 22,543 (May 23, 1975) ........................................................... 5

* Authorities upon which we chiefly rely are marked with asterisks.

*Control of Communicable Diseases; Restrictions on African Rodents, Prairie Dogs, and Certain Other Animals,*
    68 Fed. Reg. 62,353, (Nov. 4, 2003). ........................................................ 5

**\*Requirement for Persons To Wear Masks While on Conveyances
    and at Transportation Hubs**, 86 Fed. Reg. 8025 (Feb. 3, 2021) ........ 10, 11

*Requirements Affecting Raw Milk for Human Consumption in
    Interstate Commerce,*
    52 Fed. Reg. 29,509 (Aug. 10, 1987). ........................................................ 5

Mostafa Salari et al., *Social Distancing in Airplane Seat Assignments,*
    89 J. Air Transp. Mgmt. 101,915 (2020) ..................................................... 1

\* Authorities upon which we chiefly rely are marked with asterisks.

**ARGUMENT**

## I.    The CDC Had Statutory Authority To Issue The Transportation Mask Order

### A.    Masking is a conventional communicable-disease control measure that falls within the scope of Section 361(a) as interpreted by the Supreme Court

Plaintiffs are five individuals (joined by an organization with other unidentified members) who wanted to fly commercially at the height of the pandemic without wearing a mask.  *See* Gov't Br. 8-9.  They do not dispute that commercial air travel posed an acute risk of spreading the virus that causes COVID-19.  Nonetheless, they contend that, instead of requiring masks, the Centers for Disease Control and Prevention (CDC) should have imposed "occupancy" limits that reduced "passenger density"—even though doing so would have drastically reduced the number of seats available for people wishing to fly and jeopardized the ability of airlines to "sell enough tickets for flights to be commercially viable."  Pl. Br. 42; *see also* Mostafa Salari et al., *Social Distancing in Airplane Seat Assignments*, 89 J. Air Transp. Mgmt. 101,915 (2020) (concluding that an airline would need to reduce capacity on an Airbus A320 by 75% to maintain 3.3 feet between passenger seats).

Plaintiffs' position turns the Supreme Court's decision in *Alabama Association of Realtors* on its head. Analyzing the same statutory authority that is at issue here, the Supreme Court held that Section 361(a) of the Public Health Service Act authorizes measures that "directly relate to preventing the interstate spread of disease by identifying, isolating, and destroying the disease itself." *Alabama Ass'n of Realtors v. Department of Health & Human Servs.*, 141 S. Ct. 2485, 2488 (2021) (per curiam). That is exactly what masks do: they isolate the disease itself by trapping viral particles so that they are not exhaled into shared airspaces and inhaled by healthy passengers. *See* American Medical Association (AMA) Amicus Br. 8-10; *Wall v. CDC*, No. 21-975, 2022 WL 1619516, at *6 (M.D. Fla. Apr. 29, 2022), *appeal pending*, No. 22-11532 (11th Cir.).

Plaintiffs admit that masking was ubiquitous during the 1918 flu pandemic that informed the enactment of Section 361(a). *See* Pl. Br. 48-49 & n.47; *see also* Public Health Experts Amicus Br. 16. The district court likewise recognized that masking is a conventional sanitation measure. Dkt. No. 53, at 12-13. That should be the end of the statutory-authority inquiry. The CDC relied on a conventional measure that was familiar to Congress when it enacted Section 361(a) and that fell easily within the scope of that provision as interpreted by the Supreme Court. Indeed, the

Supreme Court was presumably aware of the transportation mask order which, plaintiffs note, was already in place when the Supreme Court issued its decision in *Alabama Association of Realtors*.  Pl. Br. 2.

Plaintiffs' insistence that the transportation mask order was "no less sweeping and unprecedented" than the eviction moratorium at issue in *Alabama Association of Realtors*, Pl. Br. 29, and raised nondelegation issues, Pl. Br. 55-57, is baffling.  The Supreme Court emphasized that the eviction moratorium was expected to cost landlords $50 billion and that it intruded into an area that was "the particular domain of state law: the landlord-tenant relationship." *Alabama Ass'n of Realtors*, 141 S. Ct. at 2489.  By contrast, as plaintiffs concede (Pl. Br. 32), the transportation mask order imposed "negligible" (if any) financial burdens on travelers. *Wall*, 2022 WL 1619516, at *4.  And it addressed the nation's transportation system, which is an area of traditional federal jurisdiction.  As the D.C. Circuit observed in upholding a similar federal masking requirement, the COVID-19 pandemic posed "one of the greatest threats to the operational viability of the transportation system and the lives of those on it seen in decades." *Corbett v. Transportation Sec. Admin.*, 19 F.4th 478, 480 (D.C. Cir. 2021).  And as amici explain, a significant impetus for Section 361(a) was "the speed of air travel" and "the present-day mobility of our

population," which allowed contagious disease to spread "before the disease has become detectable." Public Health Experts Amicus Br. 8 (quoting H.R. Rep. No. 1364, at 24-25 (1944)); *see also id.* at 7-8 (noting the Surgeon General's 1944 testimony that "the revolution in travel brought about by the airplane has necessitated the revolution of our methods of control and our defense against disease" (quotation marks omitted)).

## B. Plaintiffs' position is contrary to longstanding CDC and FDA regulations issued pursuant to Section 361(a)

In addition to being inconsistent with the Supreme Court's reasoning, plaintiffs' position is also inconsistent with longstanding CDC and Food and Drug Administration (FDA) regulations that were issued pursuant to Section 361(a). As the Sixth Circuit recently explained in rejecting a challenge to the federal vaccination requirement for Head Start personnel, an agency's "longstanding practice" is relevant to the statutory-authority inquiry. *Livingston Educ. Serv. Agency v. Becerra*, 35 F.4th 489, 492 (6th Cir.) (quoting *Biden v. Missouri*, 142 S. Ct. 647, 652 (2022) (per curiam)), *reh'g denied*, 2022 WL 2286410 (6th Cir. June 21, 2022).[1]

---

[1] The Sixth Circuit denied a motion to enjoin the Head Start vaccine rule pending appeal on the ground that plaintiffs are unlikely to succeed on the merits. Plaintiffs' petition for rehearing en banc was denied with no judge having requested a vote.

Plaintiffs first argue that the masking requirement should have been "targeted" to infected passengers only.  Pl. Br. 15.  But Section 361(a) does not require that degree of targeting, and the CDC and FDA have long relied on this authority to issue prophylactic measures to prevent the spread of communicable disease.  For example, the 1975 ban on turtle sales that the Supreme Court cited with approval in *Alabama Association of Realtors*, 141 S. Ct. at 2487, was not targeted to infected turtles.  It was a blanket ban on the sale of small turtles (healthy or infected) that the FDA imposed because of the risk that any small turtle could be infected with salmonella.  *See Ban on Sale and Distribution of Small Turtles*, 40 Fed. Reg. 22,543 (May 23, 1975).  Likewise, the CDC and the FDA have prohibited the sale of animals from species associated with monkeypox, regardless of whether a particular animal is infected.  *See Control of Communicable Diseases; Restrictions on African Rodents, Prairie Dogs, and Certain Other Animals*, 68 Fed. Reg. 62,353, 62,354 (Nov. 4, 2003).  And the FDA has long required that all milk products distributed in interstate commerce and intended for human consumption be pasteurized because they may contain pathogenic bacteria, even though not all raw milk products are contaminated.  *See Requirements Affecting Raw Milk for Human Consumption in Interstate Commerce*, 52 Fed. Reg. 29,509 (Aug. 10, 1987); *McAfee v. FDA*, 36 F.4th

272 (D.C. Cir. 2022) (rejecting the argument that raw butter should be excluded from the pasteurization requirement).

It was equally permissible for the CDC, faced with the significant risk that any passenger on an airplane or other public conveyance could be infected with the virus that causes COVID-19, to make the masking requirement applicable to all passengers.  Indeed, plaintiffs' amici concede that the CDC could "require a plane to be disinfected regardless of whether there is any indication that the plane is diseased or dirtied."  States Amicus Br. 8.

Plaintiffs alternatively argue that the measures authorized by Section 361(a) must be directed at "property" rather than "people."  Pl. Br. 24-25.  This argument, too, is at odds with longstanding exercises of the Section 361(a) authority that plaintiffs do not challenge.  The word "property" does not appear anywhere in Section 361(a), which is broadly titled "Promulgation and enforcement by Surgeon General."  Only one enumerated measure, "destruction," is textually limited to "animals or articles."  42 U.S.C. § 264(a).  And plaintiffs concede that the FDA properly used its Section 361(a) authority to require food-handling employees to wash their hands after each use of toilet facilities on interstate conveyances, 21 C.F.R. § 1250.38, and to prohibit people suspected of having a

6

communicable disease from handling food served on such conveyances, *id*. § 1250.35. *See* Pl. Br. 26. Plaintiffs declare that these FDA regulations are valid because they "govern food safety on conveyances, which concerns property." Pl. Br. 26. By the same logic, the transportation mask order is equally valid. In both instances, the requirements are directed to people on conveyances as a means to prevent contamination. Plaintiffs further note that, "of course, food safety falls squarely within the FDA's statutory remit." Pl. Br. 26 n.15. And of course, preventing the spread of communicable disease falls squarely within the CDC's statutory remit. Indeed, prevention is so central to the CDC's mission that Congress took the trouble to amend the agency's official name to add the words "and Prevention." Pub. L. No. 102-531, § 312, 106 Stat. 3469, 3504 (1992).

Plaintiffs profess concern that the statutory term "sanitation" would render other enumerated measures superfluous if that term is interpreted to include masking, which traps viral particles before they are released into shared airspaces. Pl. Br. 19-21. That concern is misplaced for multiple reasons. First, the statutory-interpretation question is not whether "sanitation" should be broadly defined to encompass all measures that maintain sanitary conditions. The question is whether that term is properly understood to include masking, which, as explained above, was a

7

conventional sanitation measure familiar to Congress when it enacted

Section 361(a). Second, the canon against superfluity applies only when a

statute can be read to avoid superfluity, *see Marx v. General Revenue

Corp.*, 568 U.S. 371, 385 (2013), but here, plaintiffs' interpretation would

merge "sanitation" with "disinfection," and the amici States' reading of

"fumigation" would make it redundant with "disinfection" and "pest

extermination," States Amicus Br. 8 n.2. Third, the canon against

superfluity has little purchase where, as here, Congress intended a list of

enumerated measures to be illustrative only. And as the Supreme Court

explained in *Alabama Association of Realtors*, the measures enumerated in

Section 361(a) are simply "illustrating the kinds of measures that could be

necessary" to prevent the spread of communicable disease. 141 S. Ct. at

2488. The provision's catchall language—"and other measures"—ensured

that the enumerated measures would be regarded as illustrative.

For the reasons already discussed, the masking requirement at issue

here is a measure that was familiar to Congress when it enacted

Section 361(a) and that is similar to longstanding exercises of the

Section 361(a) authority. There is thus no basis to interpret Section 361(a)

to exclude that simple, commonsense measure. *Cf. West Virginia v. EPA*,

142 S. Ct. 2587, 2609 (2022) (noting that "common sense" informs the

statutory-authority inquiry).  "Of course" the masking requirement at issue here went beyond what the CDC had "done in the past to implement infection control."  *Biden v. Missouri*, 142 S. Ct. at 653.  But the CDC "never had to address an infection problem of this scale and scope before."  *Id.*  "In any event, there can be no doubt that addressing" the spread of infectious diseases "is what [the CDC] does."  *Id.*

## II. Plaintiffs' Remaining Challenges To The Transportation Mask Order Are Also Meritless

As our opening brief explained, plaintiffs' remaining arguments invite the Court to replicate the errors of the lower courts in *Biden v. Missouri*. There, for example, the district court questioned the efficacy of the vaccination requirement for healthcare personnel because the agency had extrapolated from nursing-home data.  *Missouri v. Biden*, 571 F. Supp. 3d 1079, 1093 (E.D. Mo. 2021).  That court noted that "[s]erious adverse reactions" had "been reported following COVID-19 vaccines," *id.* at 1092 n.16 (alteration in original), and declared that the agency should have considered alternatives such as testing and natural immunity, *see id.* at 1095.  The Supreme Court rejected these and other grounds for the preliminary injunction, emphasizing that "the role of courts in reviewing arbitrary and capricious challenges is to 'simply ensur[e] that the agency has acted within a zone of reasonableness.'"  *Biden v. Missouri*, 142 S. Ct. at

654 (alteration in original) (quoting *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021)).

Despite the Supreme Court's admonition, plaintiffs here argue that the CDC could not issue the transportation mask order without a "controlled trial" of the impact of mask mandates. Pl. Br. 46. They assert that there can be "adverse effects from prolonged mask use," Pl. Br. 42-43, and that the CDC should have considered alternatives such as "temperature checks," Pl. Br. 45, and "occupancy" limits, Pl. Br. 42. As in *Biden v. Missouri*, plaintiffs provide no basis to overturn the CDC's determination, which had ample support in the record before the agency. *See* Gov't Br. 20-24; AMA Amicus Br. 8-12; *see also Requirement for Persons To Wear Masks While on Conveyances and at Transportation Hubs*, 86 Fed. Reg. 8025, 8029-30 (Feb. 3, 2021) (explaining that state and local measures had been inadequate to prevent interstate transmission of the virus).

Plaintiffs likewise echo the arguments made unsuccessfully in *Biden v. Missouri* when they assert that the CDC lacked good cause to make the transportation mask order effective immediately. Pl. Br. 40-41. In an attempt to distinguish the Supreme Court's holding, plaintiffs insist that the CDC was required to repeat the "substantive findings" made earlier in the order under "a discrete heading" addressing good cause. Pl. Br. 37-38.

10

They offer no support for that formalistic assertion; "a brief statement of reasons" is all that the statute requires. 5 U.S.C. § 553(b)(B). Here, the CDC's determination that there was good cause "[c]onsidering the public health emergency caused by COVID-19," 86 Fed. Reg. at 8030, unquestionably referenced its substantive findings. In short, "[t]he highly contagious character and the devastating effects of the SARS-CoV-2 virus demanded expeditious action by the CDC." *Wall*, 2022 WL 1619516, at \*10.

## III. The District Court Compounded Its Errors By Vacating The CDC Order Nationwide

For the reasons already discussed, the district court should not have entered any relief. The court greatly magnified the impact of its errors by making its relief applicable nationwide. The problems attendant to nationwide relief have been catalogued by various Justices and judges and raised across administrations. *See, e.g.*, Gov't Br. 27-33; *Arizona v. Biden*, 40 F.4th 375, 395-98 (6th Cir. 2022) (Sutton, C.J., concurring). They were reiterated in this Court's recent decision in *Georgia v. President of the United States*, No. 21-14269, --- F.4th --- (11th Cir. Aug. 26, 2022), which, in relevant part, held that a district court erred by enjoining nationwide a vaccination requirement for employees of federal contractors, *see id.*, slip op. at 34-45.

11

Simply put, our nation has one Supreme Court, whose decisions establish nationwide precedent.  The rulings of a district judge "do not bind other district courts, other judges on the same court, or even the same judge in another case."  *Georgia*, slip op. at 36-37; *see also Wall*, 2022 WL 1619516, at *2 n.11 (citing *Fishman & Tobin, Inc. v. Tropical Shipping & Constr. Co.*, 240 F.3d 956, 965 (11th Cir. 2001)).  The remedies authorized by the Administrative Procedure Act are equitable in nature and may be no broader than necessary to redress the injuries of the parties before the court.  *See Arizona*, 40 F.4th at 397 (Sutton, C.J., concurring).  To avoid circumventing Article III limitations and class-action procedures, *see id.* at 396, relief granted to an organization should be limited to identifiable members who demonstrated an injury and agreed to be bound by the judgment before the merits ruling was issued.  *Cf. In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 319 n.20 (3d Cir. 2008) (noting that "an evaluation of the probable outcome on the merits is not properly part of the certification decision" (quoting Fed. R. Civ. P. 23 advisory committee's note, 2003 Amendments)).

At an early stage of this case, the district court correctly recognized that "[t]he better approach—and one arguably more consistent with Article III—is narrowly crafted equitable relief remedying only the harms of

the parties before the district court." Dkt. No. 35, at 16. The court should have adhered to that principle when it entered final judgment, rather than rejecting the government's argument that relief "should be limited to non-enforcement of the Mask Mandate against Plaintiffs," Dkt. No. 53, at 53.

## CONCLUSION

The judgment of the district court should be reversed.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
  *Attorney General*

ROGER B. HANDBERG
  *United States Attorney*

ALISA B. KLEIN

 *s/ Brian J. Springer*
BRIAN J. SPRINGER
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7537*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 616-5446*
  *brian.j.springer@usdoj.gov*

August 2022

13

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 2,673 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Georgia 14-point font, a proportionally spaced typeface.

*s/ Brian J. Springer*
Brian J. Springer

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2022, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*s/ Brian J. Springer*

Brian J. Springer