[PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 22-11287

_____

HEALTH FREEDOM DEFENSE FUND,
a Wyoming Not-for-Profit Corporation,
ANA CAROLINA DAZA,
an individual,
SARAH POPE,
an individual,

                                                               Plaintiffs-Appellees,

*versus*

PRESIDENT OF THE UNITED STATES,
SECRETARY OF HEALTH AND HUMAN SERVICES,
THE CENTERS FOR DISEASE CONTROL,
THE DEPARTMENT OF HEALTH AND HUMAN SERVICES,
DIRECTOR OF THE CENTERS FOR DISEASE CONTROL
AND PREVENTION, et al.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:21-cv-01693-KKM-AEP

_____

Before WILSON, JORDAN, and BRASHER, Circuit Judges.

WILSON, Circuit Judge:

In the winter of 2020, the Secretary of Health and Human Services (HHS) determined that the threat posed by the novel SARS-CoV-2 virus constituted a public health emergency. *Determination of Public Health Emergency*, 85 Fed. Reg. 7316-01 (Feb. 7, 2020). Not long after, then-President Trump declared that the global outbreak constituted a national emergency. *Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, 85 Fed. Reg. 15,337 (Mar. 13, 2020). Over the course of the next three years, spanning two presidential administrations, public servants scrambled to take actions they believed would combat the spread of the disease and safeguard the well-being of Americans. With mixed results, many of those actions were challenged in our nation's courts.

The particular action before us today is a mandate promulgated by the Centers for Disease Control and Prevention (CDC). In January of 2021, President Biden issued Executive Order 13998,

which directed the secretaries of multiple agencies to "immediately take action, to the extent appropriate and consistent with applicable law, to require masks to be worn in compliance with CDC guidelines in or on" airports, commercial aircraft, trains, public maritime vessels, intercity bus services, and other forms of public transportation. *Promoting COVID-19 Safety in Domestic and International Travel*, 86 Fed. Reg. 7205, 7205 (Jan. 21, 2021). Pursuant to that order, the CDC published the rule at issue—the *Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs*, 86 Fed. Reg. 8025-01 (Feb. 3, 2021) ("Mandate").

Among other things, the Mandate required individuals to "wear a mask while boarding, disembarking, and traveling on any conveyance into or within the United States" and while "at any transportation hub that provides transportation within the United States." *Id.* at 8029. The Mandate's duration was tied to that of the COVID-19 pandemic, remaining "in effect unless modified or rescinded based on specific public health or other considerations, or until the Secretary of Health and Human Services rescinds the determination under section 319 of the Public Health Service Act (42 U.S.C. [§] 247d) that a public health emergency exists." *Id.* at 8030.

A few months after the Mandate's promulgation, Plaintiffs-Appellees initiated this litigation, arguing that the Mandate was unlawful under the Administrative Procedure Act, 5 U.S.C. § 706(2) (APA), and unconstitutional under non-delegation and separation-of-powers tenets. Not reaching the constitutional questions, the

district court agreed with Appellees' APA arguments on a number of grounds and vacated the Mandate nationwide.

This appeal followed. For its part, the government sought to defend the legality of the Mandate and the sufficiency of the procedures by which it was promulgated. Appellees, on the other hand, sought to defend the relief they had obtained from the district court and ensure their lives were no longer impacted by the Mandate.

A Mandate that, as we write, no longer exists. On April 10, 2023, President Biden signed a joint resolution of Congress that terminated the national emergency. Act of Apr. 10, 2023, Pub. L. No. 118-3, 137 Stat. 6 (2023). More relevant to this case, on May 11, 2023, the HHS Secretary's declaration of a public health emergency expired. *See End of the Federal COVID-19 Public Health Emergency (PHE) Declaration*, Centers for Disease Control and Prevention (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html. Therefore, even had the district court sided with the government, the Mandate would have expired by its own terms on May 11, 2023. *See* 86 Fed. Reg. 8025-01 at 8030 ("This Order will remain in effect . . . until the Secretary of Health and Human Services rescinds the determination . . . that a public health emergency exists.").

This development raises the jurisdictional question of mootness—that is, whether "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v.*

*Hunt*, 455 U.S. 478, 481 (1982) (per curiam)). In making this determination, "we look at the events at the present time, not at the time the complaint was filed or when the federal order on review was issued." *Djadju v. Vega*, 32 F.4th 1102, 1106 (11th Cir. 2022). So, here, we "analyze this case as if [Appellees] had originally sought to litigate the validity of a [regulation] which by its terms had already expired." *See Burke v. Barnes*, 479 U.S. 361, 363 (1987). Rarely will challenges to a law's validity survive a mootness analysis when that law is no longer effective. *See Trump v. Hawaii*, 138 S. Ct. 377 (2017) (mem.) (holding that an appeal no longer presented a "live case or controversy" because the provisions of the challenged order "expired by [their] own terms"); *see also Aaron Private Clinic Mgmt. LLC v. Berry*, 912 F.3d 1330, 1335 (11th Cir. 2019). Probabilities aside, the basic question is whether events have occurred that deprive this court of the ability to provide meaningful relief. *See Djadju*, 32 F.4th at 1107; *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001) (per curiam).

The answer to that question is, quite clearly, yes. Appellees initiated this litigation in order to have the Mandate 1) declared unlawful and 2) set aside. Regarding Appellees' second objective, coming on the heels of a joint resolution from Congress and following the HHS Secretary's conclusion that the public health emergency has ended, the Mandate has expired on its own terms. As a consequence, there is no longer any Mandate for us to set aside or uphold. Indeed, even if we were to decide *against* Appellees and *reverse* the district court—as the government desires—there would be no Mandate to reinstate. Regarding Appellees' first objective,

we do not think asking for a declaratory judgment that the Mandate is unlawful saves this case from mootness. If it did, our case law would be turned on its head. That is, "[a]bsent exceptional circumstances, a challenge to the enforcement of a statute [would *not* become] moot when that law is no longer effective." *Aaron Private Clinic Mgmt.*, 912 F.3d at 1335.

Appellees thoughtfully argue that this case is preserved by two notable exceptions to mootness: the doctrines of "voluntary cessation" and "capable of repetition, yet evading review." However, we disagree with the applicability of both.

Starting with the doctrine of "voluntary cessation," courts have long recognized that defendants cannot moot a case and avoid litigation simply by ceasing its conduct once a complaint is filed. *Already*, 568 U.S. at 91. "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Id.* Given this possibility, the party asserting mootness carries the "heavy burden" of demonstrating to the court "that the challenged conduct cannot reasonably be expected to start up again." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)). When dealing with government defendants, we have held that challenges to laws that have been "unambiguously" terminated are moot unless there is a "reasonable basis to believe that the policy will be reinstated if the suit is terminated." *Keister v. Bell*, 29 F.4th 1239, 1250 (11th Cir.

2022) (quoting *Troiano v. Supervisor of Elections in Palm Beach Cnty.*, 382 F.3d 1276, 1285 (11th Cir. 2004)); *see also Atheists of Fla., Inc. v. City of Lakeland*, 713 F.3d 577, 594 (11th Cir. 2013). Absent any evidence of reinstatement, "there is simply no point in allowing the suit to continue and we lack [the] power to allow it to do so." *Troiano*, 383 F.3d at 1285.

Here, the government has carried its burden: there is no reasonable basis to expect the Mandate will be reinstated if this case is rendered moot. By its own terms, the Mandate expired after the HHS Secretary declared that the public health emergency has ended, and there is no hint that this decision was an effort to avoid further litigation. Further, nothing in the text of the Mandate suggests it can be revived after its expiration, and there is not a grain of evidence that the CDC has any plans to promulgate an identical mandate. And while we recognize that the government continues to defend the legality of the Mandate, that fact "has little, if anything to do . . . with the voluntary-cessation analysis." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1269 (11th Cir. 2020). The question is simply whether there is a reasonable basis to expect the challenged conduct to "start up again" if this case is declared moot. *Friends of the Earth*, 528 U.S. at 189. We conclude there is not.

Turning to the doctrine of "capable of repetition, yet evading review," this narrow exception applies only where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action

again." *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1343 (11th Cir. 2014) (citing *Davis v. FEC,* 554 U.S. 724, 735 (2008)); *see also Al Najjar*, 273 F.3d at 1336 (noting that the exception is "narrow" and only applies in "exceptional situations").

Appellees run into trouble with the second prong. While the phrase "capable of repetition" is broad and suggests that Appellees could hypothesize scenarios in which the government might reengage in the challenged conduct, precedent reins in the phrase's meaning. To start, as noted above, we have held that there must be some reasonable, non-speculative expectation that the allegedly unlawful action will happen again. *Arcia*, 772 F.3d at 1343; *see also Bourgeois v. Peters*, 387 F.3d 1303, 1309 (11th Cir. 2004). Similarly, the Supreme Court has clarified that this "exception requires a 'reasonable expectation' or a 'demonstrated probability' that 'the same controversy will recur.'" *Fed. Election Comm'n v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 463 (2007) (cleaned up) (quoting *Murphy*, 455 U.S. at 482). In addition, for this doctrine to apply, "future recurrences must involve substantially the same parties." *Bourgeois*, 387 F.3d at 1309; *Fed. Election Comm'n*, 551 U.S. at 463.

We find Appellees' contention that there is a reasonable expectation that the CDC will issue another nationwide mask mandate for all conveyances and transportation hubs to be speculative at best. Appellees point to the CDC's broad interpretation of the Public Health Services Act of 1944, 58 Stat. 703, § 361(a), as

amended, 42 U.S.C. § 264(a)[1] and suggest that the CDC could use this interpretation to promulgate a similar mask mandate to fight against more ubiquitous diseases like the common cold and influenza.[2] Yet, conjectures of future harms like these do not establish a reasonable expectation that a mask mandate from the CDC will reissue. Indeed, since the Public Health Services Act's enactment in 1944, no government authority has ever invoked the law to require masking for common respiratory diseases. We have no basis to expect that 79-year trend to change. Moreover, while we think a legal degree confers many advantages, we do not believe it equips us to accurately predict if or when another global respiratory pandemic will infect our shared world.

And that brings us to this final point regarding this doctrine. Recall that "[f]or this 'reasonable expectation' standard to be met, future recurrences must involve substantially the same parties."

---

[1] The CDC claims that this statute provides it with the requisite authority to pass the Mandate.

[2] Appellees cite to a CDC webpage to make this point. *See Travelers' Health*, Centers for Disease Control and Prevention (last visited May 30, 2023), https://wwwnc.cdc.gov/travel/page/masks. That webpage advises that "Common respiratory infections include COVID-19, influenza, and the common cold. Masking is a critical public health tool for preventing the spread of respiratory diseases. When people properly wear a high-quality mask or respirator, they protect themselves and those around them, and help keep travel safer for everyone." We do not read this excerpt as an indication that the CDC is likely to impose additional mask mandates, but rather as guidance on best practices that individuals may utilize to prevent the spread of disease while traveling.

| 10 | Opinion of the Court | 22-11287 |
|---|---|---|

*Bourgeois*, 387 F.3d at 1309.  We note that the COVID-19 pandemic of 2020 is often compared to the influenza pandemic of 1918. Given the primary comparator occurred over a century earlier, we simply have no reasonable basis to conclude the same parties will be involved in a future controversy if a similar situation ever does arise again.  Indeed, putting aside the unanswerable question of where Appellees might be in this hypothetical situation, there is no guarantee that the president at that time would order agencies to issue a similar mask mandate or that such a mandate would come from the CDC as opposed to another agency.  Even in this case, President Biden's executive order tasked numerous agencies in addition to the CDC to pass masking requirements.  86 Fed. Reg. at 7205.  Point being, there is not a "reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party."  *Fed. Election Comm'n*, 551 U.S. at 463 (internal quotation marks omitted).

And lastly, as in all cases, we look to the Supreme Court for guidance.  Recently, the Court dismissed as moot a motion by a collection of States to intervene in a case involving "Title 42 orders"—emergency immigration decrees designed to prevent the spread of COVID-19.  *Arizona v. Mayorkas*, 143 S. Ct. 1312 (2023) (mem).  While the Court's brief Order was devoid of analysis, a separate Statement from Justice Gorsuch revealed that the Court's decision was based on the end of the public health emergency underlying the Title 42 orders.  *See id.* at 1313–14 (Gorsuch, J., statement).  The same reasoning applies here.

Having determined this case to be moot, we turn to the final question of this saga: What next? The parties argue over this point, but fortunately, our longstanding case law provides a clear answer. "The 'ordinary practice in disposing of a case that has become moot on appeal is to vacate the judgment with directions to dismiss.'" *League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*, 66 F.4th 905, 949 (11th Cir. 2023) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 482 (1990)); *see also United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950); *Duke Power Co. v. Greenwood Cty.*, 299 U.S. 259, 267 (1936); *Flanigan's Enters., Inc. of Ga v. City of Sandy Springs*, 868 F.3d 1248, 1271 & n.24 (11th Cir. 2017) (en banc); *Al Najjar*, 273 F.3d at 1340; *In re Ghandtchi*, 705 F.2d 1315, 1316 (11th Cir. 1983) (per curiam). So, in a case born of extraordinary circumstances, we conclude with a familiar routine.

Accordingly, the order and judgment of the district court are **VACATED**, and the district court is instructed to **DISMISS** the case as **MOOT**.